IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNIVERSITY OF UTAH,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-904-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Currently before the Court is Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) and Defendant's Motion for Summary Judgment (ECF No. 30). Having considered the parties' motions, the related pleadings, and the record, the Court DENIES Plaintiff's Motion for Partial Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

I. **INTRODUCTION**

The University of Utah sued the United States seeking refunds of Federal Income Contributions Act ("FICA") taxes with respect to certain medical residents. The University of Utah claims that the medical residents are exempt from FICA taxation because they are "students" under an agreement between the State of Utah and the Commissioner of Social Security. The United States challenges the University of Utah's interpretation, contending that medical residents are not "students" under the agreement and thus they are not exempt from FICA taxation. For the reasons set forth below, the Court agrees with the United States.

## II. STATUTORY AND REGULATORY BACKGROUND

Congress, through the Social Security Act and related legislation, has created "a comprehensive national insurance system that provides benefits for retired workers, disabled workers, unemployed workers, and their families." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 48 (2011). "Congress funds Social Security by taxing both employers and employees under FICA on the wages employees earn." *Id.* When Congress adopted the Social Security Act in 1935, it excluded services performed by state employees from coverage due to questions about whether it could compel state participation. *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 44 (1986).

In 1950, Congress passed 42 U.S.C. § 418 ("Section 218" of the Social Security Act), which allows states to voluntarily opt-in to the Social Security System. *Bowen*, 477 U.S. at 44-45.[1] States opt-in by executing "an agreement," commonly referred to as a § 218 agreement, with the Commissioner of Social Security. § 418(a)(1). Under a § 218 agreement, a state may define to a certain extent which state employees participate in Social Security. *Bowen*, 477 U.S. at 45. A § 218 agreement cannot be "inconsistent with the provisions of [§ 418]." § 418(a)(1).

The Internal Revenue Code's state-employee exemption incorporates the various state § 218 agreements by excluding from FICA taxation "service performed in the employ of a State" unless the service is "included under an agreement entered into pursuant to section 218 of the Social Security Act." I.R.C. § 3121(b)(7)(E).[2] In other words, services performed in the employ

---

[1] While states were originally allowed to withdraw from § 218 agreements, Congress prohibited such withdrawals beginning in 1983. § 418(f) ("No agreement under this section may be terminated, either in its entirety or with respect to any coverage group, on or after April 20, 1983."); *Bowen*, 477 U.S. at 48.

[2] The § 3121(b)(7)(E) exemption applies only to employees who participate in a state retirement program. *See* I.R.C. § 3121(b)(7)(F). Consistent with this, the University of Utah seeks refunds for only those medical residents that participate in the University of Utah's retirement system.

of a state are not subject to FICA taxation unless the state has opted in such services pursuant to a § 218 agreement. *Id.*

When opting in employees pursuant to a § 218 agreement, "states may employ exclusions in their agreement to ensure that specified subsets of employees are not opted-in" through the § 218 agreement. *Univ. of Texas Sys. v. United States*, 759 F.3d 437, 439 (5th Cir. 2014). One of the optional exclusions that a state may include in a § 218 agreement is for "services performed by a student." 42 U.S.C. § 418(c)(5). Section 418(c)(5) cross-references the student exclusion applicable to private employers found in § 410(a)(10), which applies to "[s]ervices performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university." §418(c)(5). In short, § 418(c)(5) allows states to exempt "services performed by a student" from FICA taxation.

The Social Security Administration ("SSA") has a longstanding position, dating back to at least 1978, that medical residents do not qualify as students, as the term is used in the Social Security Act and § 218 agreements. *See Mayo Found.*, 562 U.S. at 49 (observing that the SSA has "always held that resident physicians are not students."). In 1978, the Commissioner of Social Security issued a ruling addressing the State of Arizona's claim that medical residents were students whose services were excluded under Arizona's § 218 agreement; and in the ruling, the Commissioner found that the medical residents were "not excluded from coverage under the student exclusion," explaining that the SSA "has always held that resident physicians are not students." SSR 78-3, 1978 WL 14050 (1978).

In 1998, the Eighth Circuit decided a case that involved the coverage under the Social Security Act of medical residents at the University of Minnesota during 1985 and 1986.

3

*Minnesota v. Apfel*, 151 F.3d 742, 743 (8th Cir. 1998). The University was a state institution and had entered into a § 218 agreement with the SSA to provide coverage to its employees. *Id.* at 744. Minnesota and the SSA disputed whether the University's medical residents were "employees" as defined in the parties' § 218 agreement. *Id.* The court held that the medical residents were not "employees" as defined in the parties' § 218 agreement—and thus the medical residents were not subject to FICA taxation. *Id.* at 745-47.

In a holding that was not necessary to the case because the court had already determined that the medical residents were not subject to FICA taxation since they were not employees, the court concluded that the medical residents were also not subject to FICA taxation because they qualified for the student exception of Minnesota's § 218 agreement and the Social Security Act. *Id.* at 747-48. In reaching this holding, the court rejected the SSA's "bright-line rule" that medical residents are not students because such a rule is "inconsistent with" the agency's regulation, which the court viewed as calling for a "case-by-case" determination of student status. *Id.* at 748. In response to *Apfel*, the SAA issued an "Acquiescence Ruling," in which the SSA stated that it would apply *Apfel*'s case-by-case approach in the Eighth Circuit but noted that "[u]nder SSA rules, the services performed by medical residents do not qualify for the student exclusion." SSAR 98-5(8), 63 Fed. Reg. 58,444, 58,446 (Oct. 30, 1998).

On October 21, 1998, Congress granted states a brief, three-month opportunity to withdraw their student employees from social security coverage under their § 218 agreements.[3]

---

[3] Members of Congress from two states whose § 218 agreements did not include a student exception, Texas and Pennsylvania, had introduced similar legislation beginning in 1996. *See* To Amend the Internal Revenue Code of 1986 to Extend Certain Expiring Provisions, Provide Tax Relief for Farmers and Small Businesses, and for Other Purposes, H.R. 4738, 105th Cong. (1998) (introduced by Rep. Bill Archer of Texas); A Bill to Provide an Opportunity for States to Modify Agreements Under Title II of the Social Security Act with Respect to Student Wages, S. 2325, 105th Cong. (1998) (introduced by Sen. Kay Bailey of Texas); To Provide for

Congress granted states this opportunity in a section of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999. Section 2023 of the Act provides:

> Notwithstanding section 218 of the Social Security Act, any such agreement with a State (or any modification thereof) entered into pursuant to such section may, at the option of such State, be modified at any time on or after January 1, 1999, and on or before March 31, 1999, so as to exclude service performed in the employ of a school, college, or university if such service is performed by a student who is enrolled and is regularly attending classes at such school, college, or university.

Pub. L. 105-277 § 2023, 112 Stat. 2681. The stated reason for § 2023 was that "[t]hree states chose not to seek an exemption from Social Security coverage" and thus the provision "allows a limited window of time (January 1 through March 31, 1999) for States to modify existing State agreements to exempt students (including graduate assistants) from Social Security coverage who are employed by a public school, university, or college in a nonexempted State." H.R. Rep. No. 105-825, at 1585 (1998) (Conf. Report); *accord* H.R. Rep. No. 105-817, at 58 (1998); Staff of Joint Comm. On Taxation, 105th Cong., General Explanation of Tax Legislation Enacted in 1998 at 280 (Comm. Print 1998). The legislative history surrounding § 2023 makes no mention of *Apfel*.

### III. FACTUAL BACKGROUND

The State of Utah entered into a § 218 agreement in 1951. Utah's original § 218 agreement and all subsequent modifications provide that "[t]he State [of Utah] will pay to the

---

Modification of State Agreements Under Title II of the Social Security Act with Respect to Certain Students, H.R. 1035, 105th Cong. (1997) (introduced by Rep. Phil English of Pennsylvania); A Bill to Provide for Modification of the State Agreement Under Title II of the Social Security Act with the State of Pennsylvania with Respect to Certain Students, S. 2044, 104th Cong. (1996) (introduced by Sen. Rick Santorum of Pennsylvania); To Provide for the Modification of the State Agreement Under Title II of the Social Security Act with the State of Pennsylvania with Respect to Certain Students, H.R. 3450, 104th Cong. (1996) (introduced by Rep. William Clinger of Pennsylvania).

Secretary of Treasury, at such time or times as the Administrator may by regulation prescribe, amounts equivalent to the sum of the taxes which would be imposed by sections 1400 or 1410 of the Internal Revenue Code if the services of employees covered by this agreement constituted employment as defined in sections 1426 of such code." The State of Utah modified its § 218 agreement to include employees at the University of Utah in 1953. In 1973, the State of Utah modified its § 218 agreement to exclude "as provided by the Federal Statutes, services performed in the employ of a school, college, or university by a student who is enrolled and regularly attending classes at such school, college, or university on a full-time basis."

The State of Utah again modified its § 218 agreement in 1999 ("Modification 208") to exclude "service performed in the employ of a school, college, or university if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university for all coverage groups of the State and its political subdivisions currently (as of the date this modification is executed) included under this agreement and to which the agreement is hereafter made applicable." The only substantive change between Modification 208 and the prior student exclusion is that Modification 208 omits the term "full-time basis" as a modifier to student. Modification 208 was signed during the statutory three-month opportunity for states to revisit their student exclusions under § 2023 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999.

The University of Utah has introduced an affidavit of Joan Gines, the current Vice President of Human Resources at the University of Utah, in which she testifies that it was general knowledge in the administrative offices of the University in 1999 that Modification 208

would exempt medical residents from FICA taxation.[4] But the University of Utah has no evidence that this understanding was communicated to the SSA, and the University has failed to produce any evidence of the State of Utah's intent in modifying the § 218 agreement. Based on the plain language of Modification 208, the State of Utah's apparent intent was to extend the exclusion from just full-time students to part-time students. The language in Modification 208 is identical to the student exception contained in I.R.C. § 3121(b)(10).

Although the University of Utah has consistently paid FICA taxes with respect to its medical residents, around the time that the State of Utah executed Modification 208, the University began requesting FICA tax refunds with respect to its medical residents for tax periods dating back to 1995. On December 23, 2015, the University of Utah sued the United States seeking refunds of FICA taxes that the University had paid with respect to medical residents.[5] The University of Utah now seeks partial summary judgment, claiming that medical resident are students under Utah's § 218 agreement; and the United States seeks summary judgment, claiming that medical residents are not students under Utah's § 218 agreement.

## IV. DISCUSSION

### A. Motion Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact.

---

[4] The United States claims that the statement is hearsay and lacks foundation. The Court disagrees. The Court finds: (1) that the University of Utah could lay the adequate foundation so that Gines could testify to this fact; and (2) that such testimony is not hearsay because it is not offered to prove the truth of the matter asserted, but rather it is offered to show Utah's understanding of the purpose of its § 218 agreement.

[5] At oral argument, the University of Utah clarified that, in the present case, it is seeking FICA tax refunds only for periods after April 1, 2005.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When the nonmoving party bears the burden of proof at trial on a dispositive issue, as the University of Utah does here, that party must "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Thus, summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole" that is designed "to secure the just, speedy and inexpensive determination of every action." *Id.*

### B. Interpretation of the § 218 Agreement

At issue here is whether Utah's § 218 agreement exempts medical residents at the University of Utah from FICA taxation. The University of Utah claims that Utah's § 218 agreement excludes medical residents from FICA taxation, and the United States claims that the § 218 agreement does not exclude medical residents from FICA taxation. The Court agrees with the United States.

The University of Utah argues that its medical residents are exempt from FICA taxation based on the state-employee exemption in I.R.C. § 3121(b)(7)(E). The state-employee exemption provides that service performed for a state entity is not employment for purposes of FICA

taxation unless that service is "included under an agreement entered into pursuant to section 218 of the Social Security Act [42 U.S.C. § 418]." I.R.C. § 3121(b)(7)(E). Likewise, 42 U.S.C. § 418(a)(2) provides that the term "employment," for the purposes of the Social Security Act, encompasses "services included under" a state's § 218 agreement. Thus, "the scope of the state employee exemption, in both the Internal Revenue Code and the Social Security Act, is necessarily determined by the scope of each individual state's [§ 218] agreement: the dispositive issue in discerning the extent of coverage is whether the service at issue is 'included under' an agreement." *Univ. of Texas*, 759 F.3d at 441. The Court must therefore look to Utah's § 218 agreement, specifically the student exclusion, to determine whether the services at issue—those performed by medical residents—are excluded from Utah's § 218 agreement.

The student exclusion in Utah's current § 218 agreement excludes from FICA taxation "service performed in the employ of a school, college, or university if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university for all coverage groups of the State and its political subdivisions currently (as of the date this modification is executed) included under this agreement and to which the agreement is hereafter made applicable." This language tracks the language of the student exclusion in 42 U.S.C. § 418(c)(5), which incorporates the student exclusion for private employers in § 410(a)(10): "'employment' . . . shall not include . . . [s]ervices performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university."

The applicable statutory text, Utah's § 218 agreement, and the case law indicate that Utah's § 218 agreement is contractual in nature. *See Univ. of Texas*, 759 F.3d at 441; *Bowen*, 477 U.S. at 52-53 (describing § 218 agreements as contractual in nature). Thus, the question is

whether the language in Utah's § 218 agreement excluding from FICA taxation "service performed in the employ of a school, college, or university if such service is performed by a student" covers service performed by medical residents at the University of Utah. Put simply, the question is whether medical residents are students under Utah's § 218 agreement. If the medical residents are not students, they are subject to FICA taxation and the United States is entitled to summary judgment. If, however, the medical residents are students, they are exempt from FICA taxation and the University of Utah is entitled to partial summary judgment.

"[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs., Corp.*, 487 U.S. 500, 504 (1988). The federal law of contracts is the general contract law that can be found in treatises and restatements. *Univ. of Texas*, 759 F.3d at 443 (citing *Franconia Assocs. v. United States*, 536 U.S. 129, 141-42 (2002)). "[W]here language has a generally prevailing meaning, it is interpreted in accordance with that meaning." Restatement (Second) of Contracts § 202(3)(a). And of course, when all parties attach the same meaning to a term of a contract, the term is interpreted in accordance with that meaning. *Id.* § 201(1). If, however, the parties attached different meanings to a term and one party has reason to know of the other party's meaning, than the meaning of the party who did not know of the other party's meaning prevails. *Id.* § 201(2).

In a case almost identical to the case at hand, *University of Texas Systems v. United States*, 759 F.3d 437, 443-46 (5th Cir. 2014), the Fifth Circuit applied contract law principles to hold that medical residents at the University of Texas were not students within the meaning of Texas's § 218 agreement. The court relied on three reasons. *First*, as is the case here, when Texas added a student exclusion to its § 218 agreement in 1999, the SSA had "clearly disclosed its understanding that medical residents did not fall within the meaning of the term 'student' as that

term is used in the student exclusion that states could incorporate into their § [218] agreements." *Id.* at 444. In support of this, the court looked at: (1) the Commissioner of Social Security's 1978 ruling in which he explained that the SSA "has always held that resident physicians are not students," SSR 78-3, 1978 WL 14050 (1978); and (2) the SSA's "Acquiescence Ruling" issued in 1998, in which the SSA reaffirmed that "[u]nder SSA rules, the services performed by medical residents do not qualify for the student exclusion," SSAR 98-5(8), 63 Fed. Reg. 58,444, 58446 (Oct. 30, 1998).

*Second*, the University of Texas did not have any evidence that "Texas understood the student exclusion to carry a different meaning than that held by the SSA at the time the agreement was amended." *Univ. of Texas*, 759 F.3d at 444. More importantly, even if Texas understood the student exclusion "differently from the SSA's well-disclosed meaning, there was no reason for the SSA to [have known] this [fact] as *Texas did not disclose any such contrary meaning [to the SAA]*." *Id.* (emphasis added). That is, even if the University of Texas interpreted the term student to include medical residents, it never made the SSA aware of this interpretation; and thus the SSA's longstanding interpretation would prevail. *Id.* 444-45.

*Third*, the court looked at the parties' course of performance to determine that medical residents at the University of Texas did not fall within the student exclusion of Texas's § 218 agreement. *Id.* at 445. The court gave great weight to the fact that the University of Texas "repeatedly paid and withheld FICA taxes on its residents after the student exclusion was added to Texas's § [218] agreement in 1999." *Id.* (citing Restatement (Second) Contracts § 202(4) ("Where an agreement involved repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the

11

interpretation of the agreement.")). Accordingly, the court held that medical residents at the University of Texas were "not students within the meaning of the student exclusion in Texas's § [218] agreement." *Id.* at 445-46.

## C. Application of Contract Law Principles to Utah's § 218 Agreement

Here, applying basic principles of contract law, medical residents at the University of Utah are not students within the meaning of the student exclusion in Utah's § 218 agreement. As in *University of Texas*, the SSA had made it clear that it did not interpret the term student to cover medical residents when Utah executed Modification 208. *See id.* at 444. The University of Utah claims that, unlike *University of Texas* in which there was no evidence that Texas understood that its student exclusion covered medical students, "[i]t was general knowledge in the administrative offices of the University of Utah in 1999 that Modification 208 would exclude medical residents from the regime of FICA taxation." However, even assuming that the general knowledge at the University of Utah is probative of the State of Utah's understanding of its § 218 agreement, the University of Utah has no evidence that this understanding was ever communicated to the SSA. *See id.* ("[T]here was no reason for the SSA to know [Texas's meaning] as Texas did not disclose such contrary meaning [to the SSA].").

In short, even if the State of Utah understood the term student to include medical resident, it was aware (or certainly should have been) of the SSA's longstanding position that medical residents are not students. Assuming Utah understood the term student to include medical residents, this would simply be a case where Utah attached a meaning to a term—student—when it had reason to know that the SSA attached a different meaning to that term. *See*

Restatement (Second) Contracts § 201(2).[6] In such a case, because Utah never communicated its understanding to the SSA, the SSA's understanding must prevail. *See id.*

The University of Utah also claims that the court in *University of Texas* gave too much weight to the SSA's Acquiescence Ruling in light of § 2023 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999. While it is true that Congress allowed states a three-month limited opportunity to add the student exclusion to their § 218 agreements, the legislative history of § 2023 reveals that it was intended to assist the few states that had not previously taken advantage of the opportunity to add a student exclusion to their § 218 agreements: "Three states chose not to seek an exemption from Social Security coverage" and thus the "Act allows a limited window of time (January 1 through March 31, 1999) for States to modify existing State agreements to exempt students (including graduate assistants) from Social Security coverage who are employed by a public school, university, or college *in a nonexempted State*." H.R. Rep. No. 105-825, at 1585 (1998) (Conf. Report) (emphasis added).[7] As Utah

---

[6] As the United States points out, Utah could have drafted language to clarify the purpose Modification 208, such as: "This Modification clarifies that in 1973 the State of Utah intended to exclude from its election services performed by medical residents, and consistent with § 2023 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999 Congress has provided the State of Utah the option to exclude the services of medical residents from its 218 Agreement at this time." Instead, Utah used language it knew, or should have known, was insufficient to accomplish the alleged purpose of Modification 208. *See also* Restatement (Second) Contracts § 206 ("In choosing among the reasonable meaning of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). Whether the SSA would have accepted such a modification is a different question; but the uncertainty as to this question further undermines the University of Utah's position. Indeed, if the SSA would have rejected such a modification, then there is no way that the University of Utah's interpretation could prevail.

[7] The University of Utah fails to point to any legislative history suggesting that Congress passed § 2023 to allow states to exempt medical students from FICA taxation in light of *Apfel*. Indeed, both the legislative history and the proposed legislation leading up to § 2023, *see supra* note 3, suggest that § 2023 had nothing to do with *Apfel*. The sole basis for the University's suggestion that § 2023 was passed in response to *Apfel* is the fact that § 2023 was passed about three months

admits, it included a student exclusion in 1973, so it was not one of the three states that § 2023 was intended to help. In short, the University's claim that Congress, through § 2023, intended to allow states to revisit their student exclusion to exempt medical residents is unsupported by the legislative history.

The Court is also unconvinced by the University of Utah's argument that, unlike in *University of Texas*, the parties' course of performance shows that the § 218 agreement was intended to exclude medial residents. Unlike the University of Texas, which waited until 2008 to seek FICA tax refunds, *Univ. of Texas*, 759 F.3d at 445, the University of Utah filed claims for refunds in 1999—close in time to Modification 208—for tax periods starting in 1995. However, the Court fails to see how the one-sided action of requesting refunds evidences the *SSA's understanding* of the term student. Restatement (Second) Contracts § 202(4) ("Where an agreement involved repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.").[8] At best, the refund requests show that the University of Utah believed, perhaps half-heartedly,[9] that the term student included medical resident. But the SSA's

---

after the Eighth Circuit's decision in *Apfel*. But mere timing is not actual evidence of congressional intent; and the Court is not convinced that Congress was so subtle that it passed § 2023, without mentioning *Apfel*, to allow states to exempt medical residents from FICA taxation.

[8] In *University of Texas*, the court looked at the fact that the University of Texas had made FICA tax payments for many years without requesting a refund to conclude that the University of Texas did not understand the term student to include medical resident. *Univ. of Texas*, 759 F.3d at 445. It does not follow, however, that the one-sided act of requesting refunds would have shown that *both parties* understood the term student to include medical resident.

[9] As the United States points out, in 1973, Utah modified its § 218 agreement to include a student exclusion that is almost identical to Modification 208, yet the University withheld and paid FICA taxes for those periods and only sought refunds for tax periods starting in 1995. At oral argument, the University of Utah, for the first time, took the position that its medical residents

contrary understanding of the term student is best reflected by the fact that it initially denied the University of Utah's refund requests.[10]

Finally, the University of Utah suggests that the SSA should have known that the only possible purpose of Modification 208 was to exclude medical residents because Utah's § 218 agreement already had a student exclusion, unlike Texas's § 218 agreement that was at issue in *University of Texas*. But the Court is not convinced. The only substantive change between Modification 208 and the prior student exclusion is that Modification 208 omits the term "full-time basis" as a modifier to student. If anything, this suggests that the purpose of Modification 208 was to exempt *part-time* students from FICA taxation pursuant to Utah's § 218 agreement. The State of Utah may have also sought to create predictability in the future by modifying its student exclusion so that it mirrored the student exclusion in I.R.C. § 3121(b)(10). In any event, without any concrete evidence of the parties' intent in executing Modification 208, the possible

---

had been exempted from FICA taxation since 1973. However, if this were the case, the University of Utah's already untenable position is further undermined by the fact that it failed to seek any FICA tax refunds until 1999. *See Univ. of Texas*, 759 F.3d at 445 ("'[G]reat weight' should be given to the fact that [the University of Texas] repeatedly paid and withheld FICA taxes on its residents after the student exclusion was added to Texas's [§ 218] agreement in 1999."). If the University of Utah really believed its position, it would have stopped paying FICA taxes with respect to its medical residents—rather than paying under protest and seeking refunds.

[10] For the first time, at oral argument, the University of Utah offered a filing from a prior lawsuit, contending that the United States is judicially estopped from arguing that the term student does not include medical residents. *See* Status Report and Notice of Change of IRS Administrative Position, *University of Utah v. United States*, No. 2:06-cv-00595-DAK, ECF No. 70 (D. Utah. Mar. 3, 2010). However, in the filing, the IRS merely states that it has "made the administrative determination to accept the position that medical residents are excepted from FICA taxes based on the student exception under 26 U.S.C. § 3121(b)(10), for tax periods ending *before April 1, 2005*." *Id.* at 1 (emphasis added). Notably, the University of Utah admitted at oral argument that it is only seeking refunds for periods *after April 1, 2005*. Thus, the filing cannot be used as a basis for judicial estoppel as the University suggests. Moreover, the filing speaks only to the IRS's position on I.R.C. § 3121(b)(10), a Code section that is not directly at issue here. It appears that the IRS's concession was made in the context of an attempt to settle a prior lawsuit in which the University of Utah sought FICA tax refunds for its medical residents for periods prior to April 1, 2005. There is simply nothing in the filing that evidences the parties' intent in 1999 when they executed Modification 208.

purposes are infinite; and the University of Utah offers only speculation and conjecture on this point. The Court need not speculate further because the fact remains that the University has failed to produce any evidence that the purpose of Modification 208 was to exclude medical residents.

In sum, the University of Utah fails to show that the term student in the student exclusion of Utah's § 218 agreement includes medical residents. The undisputed facts show that Utah failed to communicate an understanding of the term student to the SAA, which has, for over twenty-five years, interpreted the term student to exclude medical residents. Because the University of Utah has failed to show that medical residents are excluded from FICA taxation under Utah's § 218 agreement, the United States is entitled to judgment as a matter of law. *See Univ. of Texas*, 759 F.3d at 445-46.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 30). The University of Utah's medical residents are not students within the meaning of the student exclusion in Utah's § 218 agreement, and therefore the medical residents in question are subject to FICA taxation. Accordingly, it is ORDERED that the United States is entitled to judgment in its favor on the University of Utah's claim for FICA tax refunds.

DATED September 20, 2017.

_____
Judge Jill N. Parrish
United States District Judge